UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN DOE                                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:21-CV-201-DPJ-FKB

UNIVERSITY OF MISSISSIPPI, ET AL.                                          DEFENDANTS

ORDER

This lawsuit is before the Court on Defendants' motion to dismiss [29].  Plaintiff John

Doe has responded in opposition, conceding several claims.  For the reasons explained,

Defendants' motion to dismiss is granted in part and denied in part.

I.        Factual Background

Plaintiff, a former medical student at the University of Mississippi Medical Center

(UMMC), claims he was wrongly expelled following false accusations of sexual misconduct and

"unprofessional behavior."  Compl. [1] at 2.  He believes his expulsion was "punish[ment] for

being a Black man who dated a white woman."  *Id.* at 8.  The following allegations are gleaned

from Plaintiff's 92-page Complaint [1].

A.        The Relationship

After completing a master's degree in Biomedical Science at UMMC, Plaintiff enrolled

in medical school.  *Id.* at 7–8.  Beginning in the second semester of his first year, Plaintiff

developed a romantic relationship with a female classmate ("Jane Roe"); Roe was then engaged

to another man.  *Id.* at 8–9.  After four months of texting, flirting, and engaging in consensual

sexual relations, Roe "was overcome with feelings of guilt for cheating on her fiancé."  *Id.* at 10.

Roe then "made egregious, false allegations of sexual assault and sexual harassment

against Plaintiff" in order to "cut off her relationship with him, get him kicked out of school[,]

and prevent people, including her fiancé, from finding out about her transgressions." *Id.*  Two of
Roe's classmates —Sam and Karam—brought her allegations to Gerald Clark, the Associate
Dean for Student Affairs, and Roe lodged a complaint with Pamela Greenwood, Title IX
Coordinator at UMMC, soon thereafter. *Id.* at 11–12.  According to Plaintiff, Roe alleged that he
made unwanted sexual advances in March 2019 and sexually harassed her in April 2019 but "left
out the details of [their] months-long romantic relationship." *Id.* at 11.

      B.     The Assault

     Plaintiff says things escalated when Clark "deputized" Sam and Karam to essentially run
interference between Plaintiff and Roe. *Id.* at 11 (referring to the classmates as "Clark's
barricade").  On April 11, 2019, these classmates "accosted Plaintiff," calling him "'weak,'
'scared,' and 'soft'"; pushed him against a wall; "applied a wrestling submission hold"; and
threw him to the ground. *Id.* at 13.  Clark then "arrived on the scene," "directed campus police
to remove Plaintiff from campus," and "threatened Plaintiff with dismissal from UMMC and
arrest should he return to campus." *Id.* at 14.  That was Plaintiff's last day on campus. *Id.* at 15.

     Following this incident, Plaintiff alleges that Clark wrongly painted Plaintiff as the
aggressor by suppressing video footage of the encounter, instituting a gag order directing
Plaintiff not to speak with anyone on campus, and enabling Sam and Karam to engage in a smear
campaign to defame Plaintiff. *Id.* at 14–15.  According to Plaintiff, Sam and Karam, who are
white, were never "disciplined for assaulting Plaintiff." *Id.* at 15.  And when Plaintiff attempted
to pursue criminal charges, Associate General Counsel Mark Ray allegedly contacted the Hinds

County prosecutor, communicating that UMMC did not want to see Sam and Karam convicted. *Id.* at 35.[1]

C.      Dismissal on Professionalism Charges

On April 16, 2019, Plaintiff received a letter from Loretta Jackson-Williams, Vice Dean of the School of Medicine, advising him "that the Dean's Council met, in violation of UMMC's policies, *without notice to Plaintiff*, and decided to dismiss him for alleged repeated instances of unprofessional behavior." *Id.* at 15 (emphasis in Complaint).  The Dean's Council consisted of Clark, Williams, and Lou-Ann Woodward, the Vice Chancellor and Dean of the School of Medicine.  *Id.*  Williams explained that the decision was based on Roe's allegations in the Title IX complaint and an episode of "innocuous touching" involving UMMC employee E. Liston in 2018.  *Id.* at 16; *see id.* at 17.

Plaintiff says there was a "complete lack of due process prior to [his] dismissal" and he was denied "a meaningful opportunity to defend himself."  *Id.* at 15.  He appealed the decision and was granted an appeal hearing.  *Id.* at 17.  The night before the hearing, Ray provided Plaintiff:  (1) additional allegations of misconduct by another student (McDonnell) that had been considered by the council; (2) the report of the officer who responded to the April 11 assault; and (3) Sam's and Karam's statements to the police and emails to Clark.  *Id.* at 17–18.  This last-minute production allegedly "prevented Plaintiff from calling appropriate witnesses or collecting exculpatory evidence to refute the false allegations," prohibiting Plaintiff from preparing a meaningful defense.  *Id.* at 18.  Plaintiff says he "was not given appropriate notice of the hearing, full access to the evidence, the opportunity to call his own witnesses, or incredibly, the right to

---

[1] Plaintiff claims he attempted to file an assault report with UMMC police charging Sam and Karam, but UMMC police refused to take the report until after Plaintiff was finally expelled in October 2019.  *Id.* at 34.

3

cross-examine the opposing complaining witnesses." *Id.* at 18.  The appeal panel, which consisted of the original members of the Dean's Council, upheld the decision to dismiss Plaintiff for unprofessionalism.  *Id.* at 18, 20.

        D.      Title IX Complaint

       After dismissing Plaintiff from school, Defendants notified him that Roe had filed a Title IX complaint.  *Id.* at 22.  The Title IX investigation was conducted by Greenwood and Katie McClendon, the Title IX investigator.  *Id.*[2]  Plaintiff says the investigation "favored" Roe, *id.* at 25, explaining that investigators met with Roe three times and met with him only once; limited their investigation to March 2019; refused to consider context from April 2019; declined to interview any of Plaintiff's witnesses (including a key eyewitness); avoided conducting meaningful interviews of Liston and McDonnell (the other accusers); and did not investigate the incident with Clark, Sam, and Karam, *id.* at 25–26.  On June 27, 2019, Plaintiff received notice that he was found responsible for sexual harassment related to Roe's April 2019 allegations.  *Id.* at 27.  Plaintiff says McClendon ignored the 60-day timeline for investigations and failed to keep him apprised of the investigations, as required by UMMC policy.  *Id.* at 31.  Within two days, he requested an appeal hearing.  *Id.*

       That hearing occurred about six weeks later, on August 15, 2019, but, by then, the fall semester had begun— a delay Plaintiff believes "was meant to preclude [him] from continuing his medical education, whether at UMMC or elsewhere." *Id.* at 28.  Plaintiff says the Title IX hearing proceeded much like the Dean's Council hearing.  One week before the hearing, Greenwood first provided Plaintiff the investigative report and the evidence.  *Id.*    Roe appeared

---

[2] Plaintiff accuses McClendon of being "biased against men," pointing to her activity on Twitter and her treatment of him during the process.  *Id.* at 23; *see id.* at 23–24.

by video, flanked by a UMMC advisor and McClendon, who acted as Roe's "personal protector, advocate, and prosecutor." *Id.* at 29. McClendon presented her report but selectively included and excluded communications between Plaintiff and Roe, focusing only on communications that supported her finding. *Id.* at 31–32. Similarly, while Roe described events occurring in March and April 2019, Plaintiff was told to limit his testimony to April 2019, thereby preventing him from responding to the March 2019 allegations. *Id.* at 33.

According to Plaintiff, McClendon, Greenwood, Ray, and Eric Hospodor (another Associate General Counsel) were adversarial toward Plaintiff and worked to intimidate him during the hearing. *Id.* at 28–31. He says McClendon in particular "mocked" him, "laughed" at him during his testimony, and "did not take the situation, or [his] rights, seriously." *Id.* at 31. Ray purportedly allowed Roe to testify for "hours" but interrupted Plaintiff's testimony, attempted to rush him, and told him to leave the room when he began to cry. *Id.* at 32; *see id.* at 32 n.7. The appeal panel ultimately affirmed McClendon's finding. *Id.* at 34.

E.      This Lawsuit

In this lawsuit, Plaintiff questions Defendants' handling of the assault, the professionalism expulsion, and the Title IX finding. He believes Defendants' conduct was racially motivated, stating that UMMC "has a history of giving stronger due process protections to white students" and a reputation of "kick[ing] out one Black student from every first-year class." *Id.* at 39; *see id.* at 40–41 (describing incidents where white students were allegedly treated more favorably). He also suggests that UMMC faces pressure from the Department of Education's Office for Civil Rights to "aggressively pursue sexual misconduct complaints." *Id.* at 42 (capitalization altered); *see id.* at 42–58.

As Defendants, Plaintiff named:  the University of Mississippi; the Board of Trustees for the Mississippi State Institutions of Higher Learning (IHL Board); UMMC; Gerald Clark; Loretta Jackson-Williams; Katie McClendon; Pamela Greenwood, Mark Ray; Eric Hospodor; and LouAnn Woodward.  He names all individual defendants in their official and individual capacities.

Plaintiff advances six causes of action in the Complaint:  (1) § 1983 denial of procedural due process; (2) § 1983 denial of substantive due process; (3) § 1981 race discrimination; (4) violation of Title VI; (5) violation of Title IX; and (6) § 1985 conspiracy to violate civil rights. Defendants' motion focuses on the first, second, third, and sixth causes of action.

II.     Motion to Dismiss Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555 (citations and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).[3]

III.    Analysis

In their motion to dismiss, Defendants assert six grounds for dismissal:  (1) the Eleventh Amendment bars Plaintiff's official-capacity claims against the individual defendants; (2) Plaintiff has failed to state any claim against the University of Mississippi or the IHL Board; (3) the Complaint fails to set forth a short and plain statement showing Plaintiff is entitled to relief; (4) Plaintiff has not stated a plausible substantive-due-process claim; (5) the individual defendants are entitled to qualified immunity as to the individual-capacity claims; and (6) Plaintiff cannot assert a  § 1985 conspiracy claim against the individual defendants.  The Court will address the conceded claims first.

A.    Conceded Claims

To begin, Plaintiff agrees that the University of Mississippi and the IHL Board may be dismissed.  Resp. [41] at 2.  He also concedes his § 1985 conspiracy claim; the sixth cause of action is therefore dismissed.  *Id.*

As for the § 1981 and § 1983 claims against the individual defendants in their official capacities, Plaintiff admits that his claims for monetary relief are barred by the Eleventh Amendment.  *See Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) ("Federal courts lack jurisdiction 'over suits against a state, a state agency, or a state

---

[3] Defendants also invoke Rule 12(b)(1) in advancing their Eleventh Amendment arguments, which are largely conceded.

official in his official capacity unless that state has waived its sovereign immunity or Congress

has clearly abrogated it.'" (quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d

959, 963 (5th Cir. 2014)).  But he presses his claims for "prospective equitable relief" against the

official-capacity defendants, to include "reinstatement and five other specific prospective actions

requested in the complaint."  Resp. [41] at 1; *see Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d

268, 274 (5th Cir. 2020) (noting *Ex Parte Young*, 209 U.S. 123 (1908), permits "a request for

prospective relief").

   "[T]o use the *Ex Parte Young* exception, a plaintiff must demonstrate that the state officer

has 'some connection' with the enforcement of the disputed act."  *K.P. v. LeBlanc*, 627 F.3d 115,

124 (5th Cir. 2010) (quoting *Ex Parte Young*, 209 U.S. at 157).  In his Prayer for Relief, Plaintiff

seeks:

> an injunction directing Defendants, UMMC and *Woodward* specifically, to:  (i)
> reverse the findings and sanction regarding the professionalism panel adjudication
> as well as Jane Roe's Title IX complaint; (ii) expunge Plaintiff's disciplinary
> record of all findings; (iii) remove any record of Plaintiff's expulsion from his
> educational/academic/disciplinary file and/or transcript; (iv) permanently destroy
> any record of the professionalism panel adjudication and Jane Roe's Title IX
> complaint, as well as any record of Liston and McDonnell's complaints; (v)
> immediately reinstate Plaintiff as an enrolled student in good standing at UMMC;
> and (vi) issue an update/correction to any third parties to whom Plaintiff's
> disciplinary record, professionalism adjudication and/or Title IX file may have
> been disclosed[.]

Compl. [1] at 89–90 (emphasis added) (describing relief sought as to the first cause of action);

*see id.* at 90–91 (repeating this prayer for the second, third, fourth, and fifth causes of action).

   Plaintiff has arguably identified Woodward as the sole individual defendant capable of

enforcement of the relief requested.  *See* Compl. [1] at 71 (¶ 342) (describing Woodward as "the

person responsible for the injunctive relief requested herein"); *see also* Rebuttal [45] at 4 n.2

(quoting this passage); *id.* at 4 (urging dismissal of the "*other* remaining Individual Defendants"

in their official capacities).  Accordingly, Plaintiff's claim for prospective relief proceeds only against Woodward, in her official capacity, and is dismissed as to all other individual defendants.

B.      Rule 8

Federal Rule of Civil Procedure 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  "[T]he underlying purpose of Rule 8, [] is 'to [e]liminate prolixity in pleading and to achieve brevity, simplicity, and clarity.'"  *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979) (quoting *Knox v. First Security Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952)).

Plaintiff's Complaint falls short because it says too much and yet not enough.  To begin, Defendants say the Complaint fails to offer a short and plain statement.  That's true.  First, Plaintiff's Complaint spans 92 pages, including significant portions presented in single space. *See, e.g.*, Compl. [1] at 78–80 (offering single-spaced averments).  Second, it contains large sections of background and historical commentary.  *See id.* [1] at 35–42 (discussing a history of racism); *id.* at 42–58 (discussing aggressive response to complaints of sexual misconduct). Third, Plaintiff includes legal argument and cites legal authority.  *See id.* at 72 (examining Fifth Circuit law on substantive-due-process claims).  Fourth, the Complaint presently includes large swaths of averments regarding claims or defendants that have now been dismissed.  While Plaintiff says Defendants can simply ignore those allegations when they file their Answers, Plaintiff sprinkled those now-irrelevant allegations throughout the Complaint, making it difficult to discern what remains to address.

The Fifth Circuit Court of Appeals considered similar issues in *Hall v. Civil Air Patrol, Inc.*, noting that "Rule 8(a) requires parties to make their pleadings straightforward."  193 F. App'x 298, 299–300 (5th Cir. 2006) (affirming dismissal after plaintiff failed to fix pleading

errors as instructed) (quoting *Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).  Plaintiff's Complaint violates Rule 8 because it fails to offer "a short and plain statement of the claim[s]."

At the same time, the Complaint makes it impossible to fully evaluate Defendants' motion for qualified immunity.  *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "[a] complaint can be long-winded, even prolix, without pleading with particularity").  Here, the sheer length of the Complaint and variety of issues make it difficult to link the individual defendants to the factual predicates for Plaintiff's causes of action against them.  There are seven individual defendants, six counts, and allegations that encompass multiple events—including an alleged assault, an expulsion, a professionalism appeal, a Title IX investigation, a Title IX appeal, and a criminal assault charge in state court.  Unlike some shotgun pleadings, Plaintiff at least identifies each defendant named under each count.  *See, e.g.*, Compl. [1] at 87 (Count VI).  But he then lists numerous alleged facts that support those counts without stating which defendant committed or contributed to cause them.  *See id.* at 88–89 (listing a dozen facts supporting Count VI without attribution).  It is certainly possible that the individual defendants and the Court could find facts within the 92-page Complaint somehow linking Defendants to the unattributed facts supporting the six counts, but Rule 8 is designed to eliminate such exercises.

So, the question becomes, what now?  Having considered the various options, the Court concludes that Plaintiff should receive "an opportunity to remedy the pleading deficiencies through the filing of an amended complaint."  *Thomas v. Univ. of Miss.*, No. 3:18-CV-62-GHD-RP, 2018 WL 6613807, at *6 (N.D. Miss. Dec. 17, 2018) (quoting *Moore v. Miss. Gaming Comm'n.*, No. 1:15-CV-13-DMB-DAS, 2015 WL 13019615, at *6 (N.D. Miss. Nov. 2, 2015)).

10

The amended complaint will streamline the pleadings by (1) eliminating the conceded claims and parties; (2) eliminating unnecessary commentary and legal arguments; (3) specifically identifying the facts supporting the remaining counts against the individual defendants.[4]

The Court recognizes that another Rule 12(b) motion will follow, but that would likely be the result anyway; even if the Court granted dismissal as to some claims or defendants, Plaintiff would receive an opportunity to amend. Moreover, some issues were never properly teed up in the current briefing, in part due to Plaintiff's pleading errors. When Plaintiff files the amended Complaint, he will have received an opportunity to plead his best case, so the basis of the claims will be presented in a way that allows a proper qualified-immunity analysis.[5]

IV.     Conclusion

The Court has considered all arguments the parties raised; those not addressed would not have changed the outcome. For the reasons explained, Defendants' motion to dismiss is granted in part and denied in part. Specifically,

-   the official-capacity claims against the individual defendants are dismissed, except for the claim for prospective relief against Woodward;

-   the University of Mississippi and the Board of Trustees for the Mississippi State Institutions of Higher Learning are dismissed;

-   the Sixth Cause of Action (conspiracy) is dismissed as to all Defendants;

-   Defendants' motion is otherwise denied without prejudice;

---

[4] This will also give Plaintiff an opportunity to determine whether each individual should be sued. For example, it is hard imagine a plausible claim that "slouch[ing], sigh[ing] and act[ing] dismissively" violates Plaintiff's clearly established constitutional rights. *See* Pl.'s Resp. [41] at 15 (addressing claims against Eric Hospodor).

[5] The Court also considered ordering a *Schultea* type reply, but that, too, would invite another motion to dismiss and would not fix the problems with the Complaint. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

-   Plaintiff is instructed to file an Amended Complaint within 21 days, consistent with this Order; and

-   this matter will remain stayed pursuant to the June 15, 2021 Text-Only Order staying discovery.[6]

   **SO ORDERED AND ADJUDGED** this the 15th day of March, 2022.

                                        s/ *Daniel P. Jordan III*
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

[6] If Defendants intend to file another motion to dismiss, they should do so within 21 days of the filing of the Amended Complaint.  After that date, if no motion is filed, the Court will lift the stay.