UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN DOE                                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:21-CV-201-DPJ-FKB

UNIVERSITY OF MISSISSIPPI, ET AL.                                      DEFENDANTS

ORDER

This lawsuit is before the Court on Defendants' second motion to dismiss [53].  Plaintiff

John Doe has responded in opposition.  For the reasons explained, Defendants' motion is granted

in part and denied in part.

I.        Factual Background

The Court recounted the factual background in another Order [47] and incorporates that

opinion by reference.  In very general terms, Plaintiff, a Black former medical student at the

University of Mississippi Medical Center (UMMC), claims he was wrongfully expelled

following false accusations of "sexual misconduct" and "unprofessional behavior."  Am. Compl.

[51] ¶¶ 3, 4.[1]

Relevant to this motion, Plaintiff addresses three events in his Amended Complaint:  (1) a

physical encounter with two white male classmates (Sam and Karam), who were purportedly

defending a white female student who had complained that Plaintiff sexually harassed her, *id.*

¶¶ 57–83; (2) Plaintiff's dismissal by the Dean's Council based on charges of unprofessional

behavior, *id.* ¶¶ 84–110; and (3) Plaintiff's expulsion on grounds of sexual harassment following

---

[1] Citations to the Amended Complaint are given at the paragraph level, where appropriate.  When
necessary, page numbers may also be used.

a Title IX hearing, *id.* ¶¶ 121–171.  Plaintiff believes his expulsion was "punish[ment] for being a Black man who dated a white woman."  *Id.* ¶ 36.

Plaintiff pleaded these same accusations in his initial Complaint, and Defendants moved to dismiss, arguing that (1) Plaintiff failed to comply with Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and (2) qualified immunity applies to the individual-capacity claims.  The Court granted that motion in part but gave Plaintiff leave to file an amended complaint.  Order [47].  Plaintiff complied, and Defendants now seek dismissal of that pleading based on the same grounds.  This Order will address first the Rule 8 argument and then qualified immunity as to the individual-capacity claims contained in causes of action one through three.

II.     Rule 8

Plaintiff's first Complaint failed to comply with Rule 8(a)(2), but the Court believed he could fix it.  It therefore granted leave to amend, noting that "[t]he amended complaint will streamline the pleadings by (1) eliminating the conceded claims and parties; (2) eliminating unnecessary commentary and legal arguments; [and] (3) specifically identifying the facts supporting the remaining counts against the individual defendants."  *Id.* at 11.  Plaintiff's Amended Complaint [51] accomplished some of those goals.

On the positive side, Plaintiff removed the conceded claim (count six), omitted the dismissed parties (University of Mississippi and the Board of Trustees for the Mississippi State Institutions of Higher Learning), and dropped his claims against Defendants Greenwood and

Hospodor.[2]  He also omitted some superfluous background information and historical commentary, trimming 30 pages from the original 92-page pleading.

But, as Defendants highlight in their motion, Plaintiff's Amended Complaint is still 62 pages long with 286 numbered paragraphs (many with extensive subparagraphs).  While the length makes the pleading less clear, it is not the sole issue.  As before, Plaintiff often co-mingles the issues and the actors while including too many conclusory statements and tangential factual assertions.  This makes it difficult to determine whether plausible claims have been asserted as to the separate defendants and causes of action.

While the Amended Complaint arguably violates at least the spirit of Rule 8—and has made it difficult for the Court to assess Plaintiff's efforts to overcome qualified immunity— dismissing the case would be draconian.  District courts "should construe the procedural rules with a preference toward resolving the case on the merits and avoiding any dismissal based on a technicality." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 337 (5th Cir. 2017) (citing Fed. R. Civ. P. 1 (requiring the rules to be "construed, administered, and employed by the court . . . to secure the *just*, speedy, and inexpensive determination of every action and proceeding" (emphasis added))).  Here, the Amended Complaint is undoubtedly long, densely worded, and at times too general as to who did what, but it is an improvement and minimally gives Defendants notice of the claims against them.  Where it falls short, it will not survive Rule 12(b)(6).  The Court declines to dismiss the Amended Complaint in its entirety under Rule 8.

---

[2] As Defendants point out, even though Greenwood and Hospodor are no longer listed as Defendants, their names still appear throughout the Amended Complaint.  *See* Am. Compl. [51] at 3–4 (listing Defendants); *but see id.* ¶ 247 (claiming Clark, Williams, McClendon, Greenwood, Ray, and Hospodor violated Plaintiff's rights).

III.     Qualified Immunity

Next, the following Defendants assert qualified immunity as to the individual-capacity claims against them:  Gerald Clark, Associate Dean for Student Affairs at UMMC; Loretta Jackson-Williams, Vice Dean at UMMC; Katie McClendon, Lead Title IX Investigator; and Mark Ray, Attorney with UMMC General Counsel's Office (collectively the "Individual Defendants").

They assert that defense as to the first three causes of action.  The First Cause of Action alleges that the Individual Defendants violated Plaintiff's procedural-due-process rights and the second alleges substantive-due-process violations.  Those causes of action arise under 42 U.S.C. § 1983, which provides a civil cause of action against persons who, under color of state law, deprive someone "of any rights, privileges, or immunities secured by the Constitution."  *Id.* Plaintiff's Third Cause of Action alleges that Individual Defendants engaged in race discrimination, thereby violating § 1981 and the equal-protection clause (asserted under § 1983).[3]

A.     Applicable Legal Standards

1.     Rule 12(b)(6)

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

---

[3] Plaintiff also asserts these causes of action against LouAnn Woodward in her official capacity as Vice Chancellor for Health Affairs at UMMC and Dean of the University of Mississippi School of Medicine.   The official-capacity claims fall outside the scope of this Order.

550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

### 2.   Qualified Immunity

A qualified-immunity defense protects government officials from individual liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). When a defendant asserts qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To do so, a plaintiff must show: "(1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

In considering the first prong of the qualified-immunity analysis, the Court asks "whether the facts alleged, viewed 'in the light most favorable to the party asserting the injury,' establish that 'the officer's conduct violated a constitutional right.'"  *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019)).  "[A] plaintiff is required to 'allege specific conduct giving rise to a constitutional violation.'"  *Jordan v. Wright*, No. 3:08-CV-454-TSL-JCS, 2008 WL 4279576, at *3 (S.D. Miss. Sept. 12, 2008) (quoting *Cranford v. Payne*, No. 1:04-CV-544-LG-JMR, 2006 WL 2701273, at *4 (S.D. Miss. Aug. 23, 2006)).

If the plaintiff meets the burden of showing that a federal violation has been sufficiently pleaded, the Court next considers the second prong of the analysis—whether the right was clearly established when the alleged violation occurred.  As explained by the Fifth Circuit Court of Appeals,

> For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  Thus, the right must already be clearly established at the time of the challenged conduct.  When considering whether a defendant is entitled to qualified immunity, the court must ask whether the law so clearly and unambiguously prohibited his conduct that *every* reasonable official would understand that what he is doing violates the law.  To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.  Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established.

*Turner v. Lieutenant Driver*, 848 F.3d 678, 685–86 (5th Cir. 2017) (quotation marks, alterations, and footnotes omitted).  "Ultimately, '[t]he dispositive question is whether the violative nature of the particular conduct is clearly established.'"  *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

6

This standard "is difficult to satisfy." *Id.* (citation omitted). "To show the law is clearly established, a party must 'identify a case where an officer acting under similar circumstances . . . was held to have violated'" the plaintiff's federal rights. *Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). And "[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (citations omitted, punctuation altered). Courts "must ask 'not only whether courts have recognized the *existence* of a particular constitutional right, but also . . . whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting *McClendon*, 305 F.3d at 331).

3.      Timing

Plaintiff says "the inquiry into qualified immunity is premature" because the parties have not engaged in discovery. Resp. [58] at 6 (citing *Stark v. Univ. of So. Miss.*, 8 F. Supp. 3d 825, 838 (S.D. Miss. 2014)). But "qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation marks omitted). "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)). Thus, "[w]here public officials assert qualified immunity in a motion to dismiss, a district court must rule on the motion. It may not permit discovery against the immunity-asserting defendants before it rules on their defense." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).

There is an exception. The Fifth Circuit has crafted "'a careful procedure,' which permits a district court to 'defer its qualified immunity ruling if further factual development is necessary

7

to ascertain the availability of that defense."' *Id.* (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)).

> "The district court must first find that the plaintiff has pleaded "facts which, if true, would overcome the defense of qualified immunity." [*Zapata*, 750 F.3d at 485]. If it still finds itself "unable to rule on the immunity defense without further clarification of the facts," *ibid.* (quotation omitted), then we allow the district court to order discovery "narrowly tailored to uncover only those facts needed to rule on the immunity claim," [*Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)].

*Id.*

4.    The Court's Review

Working through Plaintiff's qualified-immunity analysis has been a difficult task, complicated by his improved but still problematic Amended Complaint and the narrative style of his legal arguments. While the Court has studied the Amended Complaint, it is not the Court's responsibility to comb through that pleading searching for uncited averments that might overcome qualified immunity. As noted, "the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon*, 305 F.3d at 323.

The Court must therefore assume Plaintiff argued his best case when responding to Defendants' second dispositive motion and will focus on the averments he cited in his response. Though it has considered the Amended Complaint in full, the fault rests with Plaintiff if something was overlooked. *Cf. F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) (noting that "if a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court"); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (observing that courts are under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment").

Plaintiff's Response presents another challenge because it lumps his claims together without separately explaining which allegations support the three disputed causes of action. Sometimes it is easy to tell, but other times it is not.  For example, the factual heart of Plaintiff's qualified-immunity argument includes passages like this:

> Plaintiff was assaulted by two white students who were encouraged, and in effect deputized by Clark to form a "barricade" around complainant (¶¶ 60, 71–74); after the two white students attacked Plaintiff, Clark supported the attackers and had the campus police treat the victim, Plaintiff, as the assailant as the cops seized Plaintiff, patted him down in front of his mother and then Clark both banned Plaintiff and silenced him with a gag order all before any findings against him (¶¶ 75–78), all to protect the white female complainant; Clark banned Plaintiff with full knowledge that there was exculpatory evidence in the form of surveillance video which reflected Plaintiff being attacked, both Clark and Williams would ignore the surveillance video and Clark, Williams and Ray would all permit the surveillance video's destruction (failing to preserve exculpatory evidence (¶¶ 78–81); Williams, who openly declared she "hated" Plaintiff, orchestrated the professionalism panel hearing in secret specifically to dismiss Plaintiff without his due process rights (¶¶ 84–96); Williams, along with Clark, both formed the majority of the professionalism panel decision makers despite their respective conflicts of interest (¶¶ 58, 85), along with a subordinate dean, and dismissed Plaintiff on multiple instances of unprofessionalism without so much as an investigation, notice to the subject of the proceeding (Plaintiff), questioning the alleged complainants, and willfully ignoring exculpatory evidence or, in the case of the video, permitting the evidence to be destroyed (¶¶ 78–81, 84–90)

Resp. [58] at 8–9 (footnote omitted).  That paragraph continues for another page.  The Court has no desire to pick nits or criticize attorneys, but it must observe for the record that Plaintiff co-mingled the facts and issues in a way that makes it difficult to evaluate his arguments.

Plaintiff also provided no analysis of the clearly established law in his Response, other than addressing his procedural-due-process right to notice and an opportunity to be heard.  While Defendants' briefing on qualified immunity is likewise limited, they squarely—and correctly— argued in their opening memorandum that "the plaintiff has the burden to establish that the alleged conduct violates clearly-established law."  Defs.' Mem. [54] at 5 (citing *Kovacic v.*

*Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010)).  And they noted Plaintiff's previous failure to

"cite specific caselaw in response to Defendants' first Motion to Dismiss that would have put the

individual Defendants on notice that their actions violated his clearly established rights." *Id.* at

8.  Both observations are correct and gave Plaintiff a roadmap for what his response should have

included.

    Based on the operative briefing, this Order will separately examine the three disputed

causes of action, beginning with the law Plaintiff says was clearly established when the alleged

conduct occurred.  If Plaintiff has demonstrated a clearly established right, then the Court will

next consider whether Plaintiff has pleaded sufficient facts for that claim to survive Defendants'

motion, addressing the argued facts under the causes of action they seem most likely to support.

    B.    First Cause of Action—Procedural Due Process

        1.    Was the Right Clearly Established?

    Plaintiff claims in his First Cause of Action that the Individual Defendants violated his

clearly established right to notice and an opportunity to be heard before dismissal.  He primarily

relies on *Papin v. University of Mississippi Medical Center*, where the court recognized those

rights and denied qualified immunity on a procedural-due-process claim filed by another former

UMMC resident.  347 F. Supp. 3d 274, 279 (S.D. Miss. 2018); *see* Resp. [58] at 12.

    *Papin* is a non-binding district-court case that does not establish the law for these

purposes.  *See Roy v. City of Monroe*, 950 F.3d 245, 255 (5th Cir. 2020) (holding that "[t]wo

non-binding district court opinions hardly constitute a 'robust consensus'").  But *Papin* cites

*Mathews v. Eldridge*—as does Plaintiff—where the Supreme Court explained the factors to be

considered when determining the extent of notice required:

        The extent of any process owed is determined by weighing three factors
        under *Mathews v. Eldridge*:  (1) "the private interest"; (2) "the risk of an

> erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest", including the costs of providing additional procedural safeguards.

*Papin*, 347 F. Supp. 3d at 279 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (2011)); *see* Resp. [58] at 12.

For qualified-immunity purposes, *Mathews* is factually distinguishable and thus offers a "broad general proposition" when applied to the present facts. *Mullenix*, 577 U.S. at 12. But the Fifth Circuit has applied the *Mathews* factors to a university's decision to expel a student for alleged sexual misconduct, holding that he was entitled to "notice and some opportunity for hearing." *Plummer v. Univ. of Hous.*, 860 F.3d 767, 773 (5th Cir. 2017), *as revised* (June 26, 2017) (quoting *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)); *see id.* (citing *Mathews*, 424 U.S. at 335); *see also Papin*, 347 F. Supp. 3d at 280–81 (relying on *Plummer* and *Mathews*). *Plummer* reflects the clearly established law in 2019 and is sufficiently specific to give Defendants notice of Plaintiff's due-process right to notice and an opportunity to be heard.[4]

2.      Did an Official Violate Plaintiff's Due-Process Rights?

Plaintiff claims the Individual Defendants violated his procedural-due-process rights during both the professionalism charges before the Dean's Council and the subsequent Title IX proceeding. *See* Am. Compl. [51] at 39–40. According to the Amended Complaint, the professionalism proceeding involved an initial dismissal and a subsequent appeal. *Id.* at 16. The

---

[4] Plaintiff mentions other facts he seems to relate to this cause of action but does not offer any legal authority showing that those acts violated clearly established law. Those will be addressed separately.

Title IX proceeding consisted of an investigation, a finding, and an appeal of that finding.  *Id.* at 24–25.

Looking first at the professionalism charges, Plaintiff implicates Clark, Williams, and Ray.  *Id.* at 40–41.  Plaintiff claims "Clark and Williams[] held an initial hearing without notifying Plaintiff[] and dismissed him from UMMC on professionalism grounds."  Resp. [58] at 12.  He alleges that he "was not given appropriate notice or an opportunity to be heard" and that he "learned of the appeal with limited notice."  *Id.*; *see id.* at 9 (accusing Williams of orchestrating "the professionalism panel in secret" (citing Am. Compl. [51] ¶¶ 84–86)); *id.* (accusing Williams and Clark of dismissing Plaintiff without an investigation or notice (citing Am. Compl. [51] ¶¶ 78–81, 84–90)).

Plaintiff also claims Ray "withheld useful evidence for the professionalism appeal panel and only turned it over after business hours the evening before the panel, preventing Plaintiff from putting on a meaningful defense, with potentially exculpatory evidence and witnesses just out of his reach given the time crunch."  *Id.* at 12.  Similar allegations are found in the Amended Complaint.  *See* Am. Compl. [51] at 40–41 (advancing claims against Williams, Clark, and Ray).

Defendants never directly respond to these arguments, and the alleged facts—taken in the light most favorable to Plaintiff—would overcome the qualified-immunity defense for this part of the claim against Williams, Clark, and Ray.

Plaintiff's claims regarding the Title IX proceedings are harder to discern.  In his Amended Complaint, Plaintiff implicates McClendon, Ray, and Greenwood.  *Id.* at 41–42 (detailing claims related to Title IX proceeding).  Greenwood is no longer a defendant, so the Court will separately consider the other two.

Plaintiff starts by arguing that he has sufficiently pleaded that McClendon was "motivated by *gender bias*." Resp. [58] at 10 (emphasis added); *see also id.* at 13 (arguing that McClendon "operated with clear bias against Plaintiff, *as the male* respondent, and failed to investigate potential exculpatory evidence for Plaintiff" (emphasis added)). But the gender claim is found in the Fifth Cause of Action and is not before the Court. If Plaintiff wished to somehow link alleged gender bias to his procedural-due-process claim, then he did not make that point and failed to cite any authority clearly establishing such a violation.

The only other things Plaintiff argues as to McClendon and the Title IX process are that she "improper[ly] accept[ed] the role of complainant's advisor and prosecutor at the Title IX appeal hearing," *id.* at 10, and failed to "investigate potentially exculpatory evidence," *id.* at 13. But Plaintiff never "identify[ies] a case where an officer acting under similar circumstances . . . was held to have violated" the plaintiff's federal rights. *Nerio*, 974 F.3d at 575. Qualified immunity applies to this portion of the procedural-due-process claim against McClendon.[5]

Turning to Ray's alleged role in a Title IX proceedings, Plaintiff first claims that Ray can be held liable for merely attending certain events, including an initial Title IX meeting and appeal hearing. Resp. [58] at 10; *see also* Am. Compl. [41] ¶¶ 129–31, 150. He also says Ray "mockingly asked Plaintiff's advisor if he practiced criminal law (presuming Plaintiff was guilty as a form of intimidation)." Resp. [58] at 11 (citing Am. Compl. [51] ¶¶ 129–31). Plaintiff fails to cite legal authority suggesting that these acts violated his clearly established procedural-due-process rights.

---

[5] Out of caution, the Court reviewed Plaintiff's response to the first motion to dismiss and found no discussion of cases addressing due-process violations related to incomplete investigations or serving as a complainant's advisor and prosecutor.

Plaintiff further argues that Ray "oversaw both of the unconstitutional proceedings" and "acted in a manner adversarial to Plaintiff at both the professionalism panel and Title IX." *Id.* (citing Am. Compl. [51] ¶¶ 111–17). But the paragraphs Plaintiff cites to support those arguments never mention Ray, and, even if pleaded that way, the assertions are conclusory and point to no "personal conduct by [Ray], which is an essential element of a § 1983 cause of action." *Stokes v. Ward*, 132 F.3d 1455 (5th Cir. 1997). Ray and McClendon are entitled to qualified immunity on Plaintiff's procedural-due-process claims stemming from the Title IX proceedings.[6]

---

[6] In the interest of a complete record, the Court did review the Amended Complaint [51] for allegations of procedural-due-process violations against McClendon and Ray related to the Title IX proceedings. At best, allegations that Plaintiff was denied notice and a meaningful opportunity to be heard are advanced against Greenwood, who is no longer a defendant; are generally pled without reference to a specific individual; or are advanced against multiple defendants without factual support. *See, e.g.*, Am. Compl. [51] ¶ 143 ("The responsibility determination was made without a hearing and without any opportunity for Plaintiff to defend himself."); *id.* ¶ 148 ("Greenwood did not produce these written statements for the final report because they contained stark inconsistencies that could have been used to impeach witness credibility at the Title IX hearing."); *id.* ¶ 221(i) (claiming Ray, McClendon, and Greenwood found him responsible without a hearing). As to other alleged conduct, the Court was able to find averments regarding McClendon and Ray related to the Title IX proceedings that Plaintiff did not argue, but they would not alter the results. For example, Plaintiff pleaded that the two "influenced the panel members to believe Doe was the adverse party." *Id.* ¶ 156. Absent other facts, that allegation is no better than those the Supreme Court found insufficient in *Iqbal*. 556 U.S. at 663 (holding that plaintiff was not entitled to the presumption of truth as to conclusory statement that defendants were "the 'principal architect' of [an] invidious policy . . . 'instrumental' in adopting and executing it"). Plus, Plaintiff offers no authority indicating that this violated clearly established law. Plaintiff also says Ray interrupted his testimony by noting that "if Plaintiff's testimony was to go much longer, then they would need to adjourn the hearing under the guise of 'panelists with family obligations,'" Am. Compl. [51] ¶ 166, and that Ray "dismissively" told him to leave the room when Plaintiff began to cry, *id.* at 30 n.7. But here again, Plaintiff cites no legal authority from which Ray would have known that he was violating Plaintiff's clearly established constitutional rights.

C.      Second Cause of Action—Substantive Due Process

Plaintiff's substantive-due-process claim addresses his physical altercation with two white male classmates (Sam and Karam) and the Individual Defendants' reactions to that encounter.  Am Compl. [51] at 46–50.  Plaintiff cites no cases in response to the motion that would put the Individual Defendants on notice that their conduct violated his clearly established constitutional rights.  In fact, Plaintiff references *substantive* due process only three times in his Response:

> - "Ray, as general counsel, would certainly be aware of the constitutional rights at issue in the matter (i.e., no discrimination, notice, opportunity to defend, substantive due process), and he could be held liable for his, at minimum, deliberate indifference."  Resp. [58] at 10.

> - "Similarly, the deans, Clark, Williams and McClendon (also trained as a Title IX investigator), should reasonably be aware of the rights to be free from intentional discrimination, the due process rights to notice and opportunity to defend (described herein), and the right to be free from bodily harm (§ 1983 substantive due process)."  *Id.* at 11.

> - "The same was true of the Title IX proceeding, in which McClendon both operated with a clear bias against Plaintiff, as the male respondent, and failed to investigate potential exculpatory evidence for Plaintiff.  (*See* FAC ¶¶ 206–231 for procedural due process violation; *see* FAC ¶¶ 232–257 substantive due process violations)."  *Id.* at 13.

None of these mentions explain the nature of the substantive-due-process claim, and Plaintiff offers no citation to authority suggesting that the alleged conduct would violate clearly established law.  *Nerio*, 974 F.3d at 575 (noting plaintiff's duty to identify the controlling law); *see also Doe v. Univ. of Miss.*, 361 F. Supp. 3d 597, 615 (S.D. Miss. 2019) (granting qualified immunity on due-process claims and noting "Doe does not cite a single case that would put these Defendants on notice that their conduct violated clearly established law").  It is not enough to

simply say defendants "would certainly be aware" of these rights and then cite dozens of

paragraphs from the operative complaint.[7]

Because Plaintiff failed to meet his burden of establishing a violation of clearly

established law, the substantive-due-process claims against the Individual Defendants in their

individual capacities must be dismissed.[8]

> D.       Third Cause of Action—Race Discrimination

> > 1.       Was the Right Clearly Established?

Plaintiff premises his race claim on § 1981 and the Equal Protection Clause of the United

States Constitution.  This time, Defendants focus their arguments on whether a violation

occurred, seemingly acknowledging the existence of a clearly established right to be free from

race-based discrimination.  *See* Reply [60] at 5 (admitting "intentional race discrimination is

---

[7] Plaintiff's response to the first motion to dismiss addressed this claim (and others) in a more direct way with cited legal authority.  *See* Resp. [41] at 16–18 (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004); *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003); *McKinney v. Irving Ind. Sch. Dist.*, 309 F.3d 308 (5th Cir. 2002); *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 450-451 (5th Cir. 1994); *Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998); *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988)).  But Plaintiff neither incorporated those arguments into this response nor otherwise asked the Court to consider them.  The Court will not assume Plaintiff intended to do so because the current motion addresses a different pleading and because Plaintiff's latest Response did not attempt to address the arguments Defendants made in their earlier reply.  Regardless, even if the Court were to consider Plaintiff's original arguments and apply them to the paragraphs he now cites from the Amended Complaint to support this claim, the result would be the same.  As Defendants originally noted, the cases Plaintiff cited are not contextually similar enough to provide adequate notice to Defendants that they violated clearly established law.  *See* Defs.' Reply [45] at 5–9; *see also Mullenix*, 577 U.S. at 12.  That is, Plaintiff has not met his burden to "identify a case where an officer acting under similar circumstances . . . was held to have violated'" the plaintiff's federal rights.  *Nerio*, 974 F.3d at 575.

[8] To the extent Plaintiff might argue that he cited *Papin* in support of the substantive-due-process claim as well, Judge Reeves made it clear that Papin "never raise[d] the standard for substantive due process" and concluded Papin had "abandoned" the claim.  347 F. Supp. 3d at 278–79.

never objectively reasonable" but insisting "Plaintiff's allegations do not plausibly state a claim of intentional discrimination against any of the individual Defendants").

2.       Did an Official Violate Plaintiff's Right to Be Free from Racial Discrimination?

Plaintiff alleges that his race played a role in the handling of the physical encounter with Sam and Karam, the professionalism proceeding, and the Title IX investigation.  The question is whether Plaintiff has plausibly alleged sufficient facts to support his claim of intentional race discrimination as to the Individual Defendants.

Plaintiff acknowledges that he must allege "that similarly situated individuals outside the protected class were more favorably treated."  Resp. [58] at 7 (citing *King*, 2013 WL 319286, at *2).  One court, considering a similar case of "alleged discriminatory discipline," explained that the plaintiff "must plausibly plead that the acts of others who were not disciplined or were disciplined less severely were of comparable seriousness to their infraction."  *Does 1–2 v. Regents of the Univ. of Minn.*, 999 F.3d 571, 581 (8th Cir. 2021) (internal quotation marks, brackets, and ellipsis omitted) (quoting *Russell v. City of Kan. City*, 414 F.3d 863, 868 (8th Cir. 2005)).

To start, Plaintiff alleges that Clark, Williams, McClendon, and Ray treated the white female complainant more favorably during the investigation and proceedings by providing her "full access to the available evidence, multiple support people and numerous accommodations."  Am. Compl. [51] at 52.  He also says they deemed her "more credible" and overlooked "extensive inconsistencies in all of the white students' statements."  *Id.*

For starters, Plaintiff offers no authority suggesting that an accused and a complainant are similarly situated.  And while the Fifth Circuit does not appear to have addressed the point, other circuits have rejected Plaintiff's argument.  *See Does 1–2*, 999 F.3d at 581 ("Regarding the

alleged disparate treatment of Jane, it goes almost without saying that a sexual assault

complainant and those she accuses of sexual assault are 'not similarly situated as complainants.'"

(quoting *Haidak v. Univ. of Mass.-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019)); *id.* (affirming

dismissal of race-discrimination claim advanced by Black students accused of sexually

assaulting a white female student).

Plaintiff has not identified a comparator for the Title IX hearing, so those individual-

capacity race claims are dismissed. *See Jackson v. City of Hearne*, 959 F.3d 194, 201–02 (5th

Cir. 2020) (affirming dismissal in equal-protection race claim based on qualified immunity

because complaint failed to plausibly plead that defendant treated plaintiff less favorably than

similarly situated persons). For the same reason, the individual-capacity race claims related to

the professionalism hearing are dismissed.

That leaves Plaintiff's claim that Clark, Williams, McClendon, and Ray treated two white

students (Sam and Karam) more favorably after the physical encounter with Plaintiff. *See* Am.

Compl. [51] at 51–52. The following allegations are taken from Plaintiff's Response [58]:

- Clark encouraged Sam and Karam to form a barricade around complainant, resulting in an assault on Plaintiff. Resp. [58] at 8 (citing Am. Compl. [51] ¶¶ 60, 71–74).

- Following the assault, Clark had the campus police treat Plaintiff as the assailant and "banned and silenced [Plaintiff] with a gag order." *Id.* at 9 (citing Am. Compl. [51] ¶¶ 75–78).

- Clark, Williams, and Ray were aware of a video showing Plaintiff being attacked by Sam and Karam but ignored it and permitted it to be destroyed. *Id.* (citing Am. Compl. [51] ¶¶ 78–81).

- Clark and Williams told campus police not to "take a criminal report for the clear assault by the two white students deputized by Clark." *Id.* (citing Am. Compl. [51] ¶¶ 91–98).

- Ray attended "the Hinds County Justice Court, criminal proceeding, and spoke with the prosecutor to inform him that 'UMMC did not want to see a conviction' of the two white males who assaulted Plaintiff, resulting in the prosecutor failing to cross-examine the

male assailants with inconsistent testimony." *Id.* at 11 (citing Am. Compl. [51] ¶¶ 175–76).

Starting with McClendon, she is listed as a Defendant in the Third Cause of Action (race-based discrimination), but Plaintiff's factual arguments in his Response never mention a race claim against her. Plaintiff instead suggests that he believes she was motivated by "gender bias." Resp. [58] at 10 (arguing that McClendon was "motivated by gender bias" after addressing race claim against other defendants); *see also id.* at 13. Accordingly, the Third Cause of Action is dismissed as to McClendon.[9]

As for Clark, Williams, and Ray, Plaintiff argues that these defendants treated him less favorably than Sam and Karam in the aftermath of the altercation between the three. Plaintiff essentially argues that these Individual Defendants sided with white students over a Black student involved in the same incident, helping the whites while hurting him. For example, Plaintiff says Clark told campus police to remove him from campus and threatened him with arrest if he returned. Am. Compl. [51] at 13. But Sam and Karam "were not disciplined for assaulting Plaintiff." *Id.*; *see also id.* at 51 (describing Clark's disparate handling of Plaintiff, Sam, and Karam following the physical encounter). He also claims Clark, Williams, and Ray in various ways frustrated his efforts to obtain evidence related to the alleged assault, like the surveillance video and a timely police report, and interfered with his attempt to charge the others. *See* Resp. [58] at 9–11.

While the Court can foresee potential problems with this general theory, Defendants never directly addressed these facts, and the Court is reluctant to wander too far from the briefs.

---

[9] As with the other counts, the Court focused on what Plaintiff argued, but it did read the full Amended Complaint. That review produced no non-conclusory factual averments suggesting that McClendon did something that treated the white students more favorably.

On this record, the motion to dismiss the Third Cause of Action against Clark, Williams, and Ray related to the incident with Sam and Karam is denied without prejudice to being reasserted after discovery.

E.      Further Leave to Amend

As a final note, Plaintiff argues in his Response that he should be given another opportunity to amend his complaint. Resp. [58] at 13. There are a few problems with that. First, Uniform Local Rule 7(b)(3)(C) states: "A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response." Plaintiff filed no such motion. Second, Uniform Local Rule 15 requires submission of a proposed amended complaint with any such request. Third, he does not explain what he would do differently. "If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (citation omitted).

Plaintiff has had two opportunities to file a complaint and two opportunities to address Defendants' qualified-immunity defense. He filed his Amended Complaint after the Court explained the deficiencies in the first pleading and stated: "When Plaintiff files the amended Complaint, he will have received an opportunity to plead his best case, so the basis of the claims will be presented in a way that allows a proper qualified-immunity analysis." Order [47] at 11. Further delay is not warranted on this record. *Hall v. Civil Air Patrol*, 193 F. App'x 298, 299–300 (5th Cir. 2006) (affirming dismissal after pro se plaintiff failed to fix pleading errors as instructed).

IV.     Conclusion

The Court has considered all arguments raised by the parties; those not specifically addressed would not have changed the result.  For the reasons stated, Defendants' motion is granted in part and denied in part.  The Court finds as follows:

- As to the First Cause of Action, Ray and McClendon are entitled to qualified immunity on Plaintiff's procedural-due-process claims related to the Title IX proceedings. Plaintiff's procedural-due-process claims related to the professionalism charges against Clark, Williams, and Ray will go forward.

- As to the Second Cause of Action, all Individual Defendants are entitled to qualified immunity on Plaintiff's substantive-due-process claim.

- As to the Third Cause of Action, Plaintiff's race-discrimination claims against Clark, Williams, and Ray related to the physical encounter with Sam and Karam will go forward; all other race claims against the Individual Defendants are dismissed.

The stay of this matter is lifted.  The parties are directed to contact United States Magistrate Judge F. Keith Ball to set the case for a status conference (or case-management conference). During that conference, they should discuss narrowly tailored discovery from the Individual Defendants on the surviving claims.  While the Court has denied aspects of their motion because Plaintiff pleaded enough facts to overcome qualified immunity, additional facts and legal authority following discovery are necessary.[10]

**SO ORDERED AND ADJUDGED** this the 29th day of March, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] In the Court's experience, parties sometimes agree to move forward to general discovery for efficiency purposes.  The parties may discuss that with the magistrate judge.